## York, et al. v. Hogg.

(Decided March 10, 1911.)

### Appeal from Perry Circuit Court.

Land—Location of Boundary Line—Identification of Corners.—This is an action brought in equity to enjoin a trespass, and turns on the true location of the dividing line between appellant and appellee. Evidence was heard as to how the respective grantees construed the description of the dividing line. Held. that while the descriptions are awkwardly expressed they are clear enough not to require the aid of parol evidence to explain further than to identify the points called for as corners. The judgment should have been for the defendant. Reversed, with instructions to enter a judgment in conformity herewith.

P. T. WHEELER for appellant.

E. E. HOGG, HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

This is an action of trespass, and to enjoin trespass. It was brought in equity under the latter feature of the case. The case turns on the true location of the dividing line between the lands of appellant and the boundary owned by appellee. Both claim under a common grantor, who conveyed the two parcels (formerly constituting one body of land) by two separate deeds executed on the same day. The grantor was conveying the entire boundary in

severalty to two of his children, dividing the tract be-
tween them. The land lays on Otter Creek, a tributary of
the Middle Fork of Kentucky river. Forming the water-
shed of Otter Creek are two ridges, practically parallel
with Otter Creek, the ridges coming together at the head
of the tributaries of that stream. Near the junction of
two of its tributaries, one called Cow Creek, the other
Linden Creek, is a cliff formation in a spur of the moun-
tain ridge, in which is a cavern known as the Dark Rock
House. Appellee claims under the deed from Jeremiah
Smith to Preston Smith, which thus describes the land
conveyed: "Beginning at the crooked rock in a small hol-
low above the fish trap; thence up the river to Otter
Creek; thence up said river to upper corner tree on the
bank of said river; thence with said Smith's lines around
the ridge opposite the Dark Rock House; thence cross-
ing the said Otter Creek; thence by the Dark Rock House
square up to the top of the ridge; thence with the ridge
down opposite the crooked rock; thence to the begin-
ning."

The other deed, under which appellants claim, thus
describes the land conveyed by it: "Beginning at the
Dark Rock House; thence up the left hand side to the
ridge to said Smith's line; the outside line up to the left
hand fork; thence up to the fork ridge to the top of the
fork ridge, and around to the head of the right hand fork,
in all the lands that said Smith holds in that boundary of
land down around the ridge opposite to the Dark Rock
House; thence to the beginning."

We construe the calls to read as if the reader were
in person going around the boundaries from the begin-
ning, so as to learn what was the intention of the grantor
in using the descriptive language that he used. So that
when in going along the first named ridge a point is
reached where the Dark Rock House is at an angle of
ninety degrees, that is the point designated as being op-
posite the Dark Rock House. The line next called for is
a straight line (nothing to the contrary appearing) so as
to cross Otter Creek, pass by the Dark Rock House, and
on up the side of the next parallel ridge to its top, the
grantor meaning by "square up the ridge to the top" to
run the line in a direct straight course until the top of
the ridge was reached. Then the line is turned back to-
ward the beginning point on the river, following the top
of the ridge.

Appellee contends, and the circuit court held, that the running of the line in controversy was to follow the first named ridge until a spur ridge was reached which ran toward the Dark Rock House, being the shed between Linden Branch and main Otter Creek; thence cornering on the Dark Rock House; thence running on a deflected course to the spur coming in at that point from the opposite ridge, then following that spur in its meanders until the main ridge turning toward the river was reached. The line thus made would be irregular, crooked, and disappoint three or more of the objects or courses called for in the deeds. It would not leave the first ridge at the point "opposite the Dark Rock House;" it would not correspond with the call in the second deed "thence up the left hand side of the ridge to Smith's line;" nor would it leave the opposite ridge on a straight line from a point "opposite the Dark Rock House."

Evidence was heard as to how the respective grantees construed the description of the dividing line. It is not definite nor very satisfactory in details; it sheds little or no light on the true location, which we have made from descriptions contained in appellee's evidence and confirmed by reference to a plat of the land furnished by him on the hearing. While the descriptions are awkwardly expressed, they are clear enough in their meaning not to require the aid of parol evidence to explain further than to identify the points called for as corners, and a description of that body of land, with its water courses and its water-sheds.

The judgment should have been for the defendants. Reversed and remanded with instructions to enter a judgment in conformity herewith.